**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.H., D.H., J.P.-1, J.P.-2, and A.P.**

**No. 18-1098** (Kanawha County 2018-JA-384, 2018-JA-385, 2018-JA-386, 2018-JA-387, and 2018-JA-388)

## MEMORANDUM DECISION

Petitioner Mother T.P., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's November 15, 2018, order terminating her parental rights to T.H., D.H., J.P.-1, J.P.-2, and A.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer N. Taylor, filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in July of 2018, alleging a myriad of issues. The DHHR alleged that, beginning in 2017, petitioner failed to cooperate with their investigations, including a referral of inappropriate sexual acts committed by J.P.-1. Petitioner refused to transport the children to their scheduled forensic interviews and avoided Child Protective Services ("CPS") workers' attempts at contact. CPS workers were unable to locate petitioner until February of 2018, and she remained noncompliant with their attempts to investigate the issues in the home thereafter. Petitioner failed to enroll J.P.-1 in a "homebound" program following his expulsion from school, leaving him without proper education for

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as J.P.-1 and J.P.-2, respectively, throughout this memorandum decision.

approximately one month. Further, the children reported that petitioner allowed heavy foot traffic in the home and that they did not want to sleep in their beds because petitioner engaged in sexual intercourse with random men in their beds. A.P. threatened suicide if she were returned to petitioner's home. At some point in June of 2018, the DHHR was able to secure petitioner's agreement to enter into a temporary protection plan after she was incarcerated upon having been charged as an accessory-after-the-fact for harboring a fugitive, who was charged with malicious wounding and strangulation.[2] Petitioner's criminal history also included convictions for battery and driving under the influence. In sum, the DHHR concluded that petitioner failed to provide her children with the necessary food, clothing, supervision, housing, and financial support.

In July, the circuit court held a preliminary hearing during which it heard the testimony of a CPS worker and petitioner's family friend regarding the allegations contained in the petition. The CPS worker testified that petitioner was suspected of drug abuse due to the heavy foot traffic in and out of her home. Further, the CPS worker stated that she attempted to arrange for the children's forensic interviews several times, but that petitioner failed to follow through with bringing the children to the appointments. Petitioner's family friend testified that J.P.-1 disclosed to her that he had smoked marijuana with petitioner's friends on prior occasions. Petitioner admitted that, were she screened, she might test positive for marijuana, Suboxone, and other non-prescribed medications. After hearing evidence, the circuit court found that imminent danger to the physical well-being of the children existed and that there were no reasonable available alternatives to removal of the children from petitioner's custody. The circuit court ordered the DHHR to arrange services for petitioner, such as random drug screens, supervised visitation that was to be contingent on the provision of negative drug screens, transportation assistance, and forensic interviews for the children. Additionally, petitioner was instructed to submit to a drug screen following the hearing.

The circuit court held an adjudicatory hearing in August of 2018. Petitioner failed to attend but was represented by counsel. The circuit court noted the results of petitioner's drug screen following the preliminary hearing, which included amphetamines, methamphetamines, fentanyl, codeine, morphine, and marijuana, all with "fairly significant levels." The DHHR moved the circuit court to consider the evidence presented at the preliminary hearing for the purpose of adjudication, which the circuit court granted without objection. After hearing argument, the circuit court adjudicated petitioner as an abusing parent.

In November of 2018, the circuit court held a dispositional hearing. Testimony established that petitioner entirely failed to participate in the proceedings. Following the preliminary hearing, petitioner did not submit to any drug screens and, as such, was prohibited from visiting with her children. Further, petitioner failed to attend any parenting or adult life skills classes. Petitioner testified that she failed to remain in contact with the DHHR and participate in services because she "kind of just went into a depressed state, and [moved to] Clay County with my mom." She explained, "I just . . . couldn't get myself together." Petitioner admitted that she had a drug problem

---

[2]Prior to petitioner's arrest, only J.P.-1, T.H., and D.N. were residing in her home. A.P. resided with her paternal grandmother and J.P.-2 resided with a family friend. It appears that petitioner was released from incarceration at some point during the proceedings.

and only attempted to enter a rehabilitation program one day prior. Petitioner requested the opportunity to enter into a rehabilitation program and suggested that the children be placed with their respective fathers to allow her the opportunity to regain custody of the children. Ultimately, the circuit court terminated petitioner's parental rights. In making its findings, the circuit court determined that petitioner was presently unwilling or unable to provide adequately for the children's needs, continued to use drugs, failed to participate in any services, and refused to accept responsibility for her actions. Accordingly, the court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. It is from the November 15, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court should not have terminated her parental rights without first granting her an improvement period. According to petitioner, she was making efforts to address her drug abuse and depression. She states that the children were in safe placements and, as such, she should have been given more time to pursue treatment. Petitioner avers that "[t]here will be progress and setbacks for any addict" and that she should have been given more time to address her issues. We disagree.

Pursuant to West Virginia Code § 49-4-610, a circuit court may grant a post-adjudicatory improvement period when the parent files a motion in writing requesting an improvement period and "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345

---

[3]The fathers of T.H., D.H., and A.P. are nonabusing parents. T.H. and D.H. were placed in their father's care, while A.P. was placed with her paternal grandmother per her father's agreement. The parental rights of the father of J.P.-1 and J.P.-2 were terminated below. Those children were placed in a kinship placement with a permanency plan of adoption therein.

(2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Here, the record does not indicate that petitioner ever filed a written motion for an improvement period, nor does petitioner cite to the record to demonstrate that she orally requested one. However, assuming that petitioner's request at the dispositional hearing for an "opportunity" to enter a treatment facility establishes that she did request an improvement period, we find that petitioner failed to demonstrate that she was likely to fully participate in the same. Despite not having been granted a formal improvement period, petitioner was given several services such as random drug screens, supervised visitation with her children, and parenting and adult life skills classes. However, petitioner failed to participate in any service she was provided. Petitioner submitted to only one drug screen following the preliminary hearing and tested positive for a myriad of substances including amphetamines, methamphetamines, codeine, and fentanyl. Thereafter, petitioner disappeared and was not heard from until the dispositional hearing. She failed to attend any parenting or adult life skills classes and did not visit the children a single time following the preliminary hearing. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Id.* at 90 n.14, 479 S.E.2d at 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). As such, petitioner's assertions that she needed more time to address her substance abuse ring hollow in light of her complete lack of effort to address her issues during the proceedings below. Given this evidence, it is clear that petitioner failed to establish that she was entitled to an improvement period, and, accordingly, we find no error.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As set forth above, petitioner clearly failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of her children. Petitioner abused drugs, disappeared for several months, failed to maintain contact with the DHHR, did not attend her parenting or adult life skills classes, and failed to visit with the children. While she now

claims that she needed more time to enter a rehabilitation program, we note that she made no effort to contact any programs until one day before the dispositional hearing. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence of petitioner's complete lack of participation in the underlying proceedings, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 15, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 24, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison